IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The United States of America, *ex rel.* Susan Rush; Belinda Pickett; and Tamara Keitt,<br><br>   Relators,<br><br>vs.<br><br>Agape Senior, LLC; Agape Senior Services, Inc.; Agape Senior Services Foundation, Inc.; Agape Senior Primary Care, Inc.; Agape Senior Foundation Inc.; Agape Senior Community, Inc.; Agape Hospice of the Piedmont, Inc.; Agape Hospice of the Low Country, Inc.; Agape Hospice House of Laurens, LLC; Agape Hospice of Horry County, Inc.; and Agape Hospice House of Horry County, Inc.,<br><br>   Defendants. | C/A No. 3:13-cv-00666-JFA<br><br><br>**ORDER** |

## I. INTRODUCTION

Before the court are several motions relating to which of two sets of *qui tam* relators are entitled to the potential bounty against the numerous Agape defendants captioned for Agape's alleged submission of false claims to the United States.[1]  In an attempt to avoid risky rulings on the False Claims Act's public disclosure and first-to-file bars, the relators in both cases have moved the court to consolidate the cases.  For the reasons given below, the court refuses to consolidate the cases, and finds that the *United States ex rel. Michaels v. Agape* case is the first-to-file on all claims asserted.

---

[1] This order will be filed separately in both actions.

1

## II. PROCEDURAL BACKGROUND

The first of the two cases, *United States ex rel. Michaels v. Agape* ("*Agape I*"),[2] was filed on December 7, 2012, and the second of the two cases, *United States ex rel. Rush v. Agape* ("*Agape II*"),[3] was filed on March 12, 2013. *Agape I* remained under seal for four months, and was unsealed on March 7, 2013. Five days later, *Agape II* was filed. It remained under seal for over thirteen months, and was unsealed on March 30, 2014. The government declined intervention in both actions.

Importantly, *Agape II* was partially unsealed on July 11, 2013, and, at the request of the government, this court expressly allowed the government to:

> disclose the *qui tam* Complaint [in *Agape II*] and any other filings or documents herein, or any subset of the information contained in the same to: 1) Defendants and their attorneys; (2) any employees or agents that Defendants deem necessary for the defense of this case; (3) to persons the United States deems necessary to the investigation of the case; (4) to any state Medicaid Fraud Control Unit, including the South Carolina Medicaid Fraud Control Unit, and their employees, investigators, and state attorneys who may become involved with the investigation; (5) to expert witnesses; (6) should mediation become necessary, to a mediator and mediator's staff; and (7) to relators and relators' counsel in any other qui tam cases with complaints containing similar allegations against these or related Defendants which are or may be pending.

*Agape II*, ECF No. 9.

Facing a motion to dismiss, the relators in *Agape I* filed a proposed amended complaint on September 16, 2013, about two months after the court partially lifted the seal in *Agape II*. The court heard the motion to dismiss on December 2, 2013, and the relators in *Agape I* submitted a new proposed amended complaint at the hearing. The court partially granted Agape's motion to dismiss, leaving the heart of False Claims Act case alive, and allowed the relators in *Agape I* to amend their complaint. Because Agape had not had a chance to review the

---

[2] Docket No. 0:12-cv-03466.
[3] Docket No. 3:13-cv-00666.

proposed amended complaint brought to the December 2, 2013 hearing, the court allowed Agape to review and brief the sufficiency of the amended complaint.

The court held a second hearing on Agape's motion to dismiss in *Agape I* on January 31, 2014. Prior to and subsequent to that hearing, the relators in *Agape I* filed "supplements," providing newly obtained information and bolstering the amended complaint, but not formally amending it. By way of email to associated counsel, the court requested the relators in *Agape I* to file a motion to amend the complaint. They did so, and Agape opposed. On March 28, 2014, the court denied the remainder of Agape's motion to dismiss, and granted the relators in *Agape I*'s motion to amend the complaint. Agape answered in *Agape I* on April 28, 2014.

Both sets of relators claim that Agape systematically (1) submitted false claims for hospice reimbursement, and (2) submitted false claims by pushing patients to general in-patient ("GIP") care, when GIP care was inappropriate. Prior to moving for consolidation, both sets of relators claim that they were the first-to-file on both the hospice and GIP claims. On May 15, 2014, Agape moved to partially dismiss *Agape I* on public disclosure grounds, arguing that the GIP claims were first disclosed—and publicly disclosed—in *Agape II*. *Agape I*, ECF No. 92. That motion prompted the relators in *Agape II* to file a "Motion to be Declared First to File Pursuant to 31 USC 3730(b)(5)," on both the hospice and GIP claims. *Agape II*, ECF No. 58. Consistent with its argument that the GIP claims were first disclosed in *Agape II*, Agape has also moved to dismiss *Agape I* in its entirety, for failing to file the amended complaints under seal. *See* 31 U.S.C. § 3730(b)(2); *Agape I*, ECF No. 131.

The court set a hearing on all of these matters for July 28, 2014, in both cases. Minutes before the hearing, the relators in both *Agape I* and *Agape II* informed the court and Agape that they wished to consolidate both cases, purportedly resolving the first-to-file issue and the public

3

disclosure issue. Because neither Agape nor the court had researched the viability of consolidation, the court ordered simultaneous briefing on the issue. Agape opposes consolidation, and demands an answer on the first-to-file and public disclosure bars. All motions are now ripe for disposition.

### III. LEGAL STANDARD

Subject-matter jurisdiction of an FCA claim through a Rule 12(b)(1) motion to dismiss may be challenged in one of two ways. First, a party may launch a facial attack by contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see also Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997). If a complaint is attacked facially for lack of subject-matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219. Alternatively, one may contend that the complaint's jurisdictional allegations simply are not true. *Id.*; *see also Garcia*, 104 F.3d at 1260–61. In such a factual attack of the complaint's jurisdictional allegations, the plaintiff carries the burden of proving subject-matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In that situation, this court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams*, 697 F.2d at 1219. Further, the presumption of truthfulness does not apply, and this court may decide disputed issues of fact related to subject-matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

On first-to-file grounds, Agape contends that the initial complaint in *Agape I* fails to

allege sufficient facts to support subject-matter jurisdiction over the GIP claims, because the knowledge gained from the complaint in and investigation of *Agape II* was used to state a claim in *Agape I* in subsequent amended complaints. In other words, Agape contends that only *Agape II* stated a claim for the GIP claims in the initial complaint. Conversely, Agape argues that *Agape I* was the first-to-file the hospice claims. Thus, for purposes of the first-to-file bar, they launch a facial attack, and this court applies a Rule 12(b)(6) standard that assumes the truthfulness of the facts alleged in Relator's complaint.

In considering Agape's motion to dismiss the GIP claims in *Agape I* on public disclosure grounds, made pursuant to Fed. R. Civ. P. 12(b)(1), which attacks the viability of jurisdictionally significant allegations, the Court may probe into the record and is not required to accept all jurisdictional allegations by the nonmoving party as true, as it would in a motion made under Rule 12(b)(6) or a "facial" attack to jurisdiction under 12(b)(1). *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). Relator has the burden of establishing jurisdiction. *Id.*; *see also U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir.2009) (31 U.S.C. § 3730(e)(4) offers the "jurisdictional facts" which a relator has the burden of proving by a preponderance of the evidence to survive Defendants' Rule 12(b)(1) motion). In this case, this means that the relators in *Agape I* bear "the burden of proving that the allegations underpinning [her] FCA claims were not 'based upon' [a public disclosure]." *Vuyyuru*, 555 F.3d at 348.

### IV. ANALYSIS

#### a. First-to-File

The FCA imposes civil liability on persons who knowingly submit false claims to the government. 31 U.S.C. § 3729, *et seq.* To that end, the FCA establishes a scheme that permits a private citizen, who becomes a relator, to initiate a civil action known as a *qui tam* against

perpetrators of fraud.  *See* 31 U.S.C. § 3730(b).  While encouraging whistleblowers, however, the FCA also "seeks to prevent parasitic lawsuits based on previously disclosed fraud."  *U.S. ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 181 (4th Cir. 2013).  "To reconcile these conflicting goals, the FCA has placed jurisdictional limits on its qui tam provisions," including the first-to-file rule, 31 U.S.C. § 3730(b)(5).  *Id.*

Under the first-to-file rule, "[w]hen a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action."  31 U.S.C. § 3730(b)(5).  In other words, only one *qui tam* action relating to the alleged fraud is permitted to be pending at any time.  The Fourth Circuit has described the first-to-file bar as "an absolute, unambiguous exception-free rule."  *Carter*, 710 F.3d at 181.  "Therefore, whoever wins the race to the courthouse prevails and the other case must be dismissed" for lack of subject-matter jurisdiction.  *Id.*

To determine if a case is barred by the first-to-file rule, this court first must determine if the earlier filed case was pending at the commencement of the case filed later.  *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 920 (4th Cir. 2013).  Second, this court must decide if the claims in the later-filed case are based on facts underlying the case filed first.  *Carter*, 710 F.3d at 182.  *Agape I* undisputedly was pending at the time *Agape II* was filed.  *Agape II* undisputedly was pending at the time all of the amended complaints in *Agape I* were filed.  With this in mind, the court turns to the second prong of the analysis.

Under the first-to-file rule, "a later suit is barred if it is based upon the 'same material elements of fraud' as the earlier suit, even though the subsequent suit may 'incorporate somewhat different details.'"  *Id.* (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001).  Consequently, the first-to-file bar does not require the

6

exact same facts to be alleged in the later-filed case; rather, this court must determine "whether the [subsequent complaint] alleges a fraudulent scheme the government already would be equipped to investigate based on the [prior complaint.]"  *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1209 (D.C. Cir. 2011).

The initial complaint in *Agape I* provided allegations regarding the hospice eligibility claims, and Agape agrees that *Agape I* was first-filed on those claims.  Agape disputes, however, that *Agape I* was first-filed on the GIP claims.  The court disagrees.

The first paragraph of the initial complaint in *Agape I* reads:

> The termination of Michaels' employment was a retaliatory discharge by Defendants for "losing a patient" by allowing one of her patients to go to a hospital emergency room, as the patient and his family wanted, instead of transferring him to the Agape skilled nursing facility for General Inpatient Care ("GIP") as her supervisors instructed, regardless of the patient's wishes and health condition.

*Agape I,* ECF No. 1.  The initial complaint in *Agape I* contains the following additional allegations with regard to the GIP claims:

> 38. Relators are aware of the following practices of Defendants occurring on an ongoing, regular, systematic and widespread basis at Agape Senior, LLC and other Defendants named herein: …
>
> c. Inappropriate referral to Defendants' GIP care
>
> i. Strongly encouraging patients and their families through RN Case Managers to be admitted to Defendants' skilled nursing facility for GIP care, so that Agape will receive a higher daily reimbursement rate, and discouraging them from seeking hospital care for acute conditions not related to their terminal illness, even when in the patient's best interest medically, so that Agape will not have to pay for those medical costs; on numerous occasions, this has resulted in imminent and avoidable death to the patient from causes unrelated to their terminal diagnosis, if any, due to them receiving a lower level of care than required by their medical condition;
>
> ii. Strongly discouraging the hospital from treating or admitting hospice patients, even when it is in the patient's best interest medically, by requiring RN Case Managers to go to the hospital and instruct hospital personnel that this is a

>hospice patient, not to perform invasive treatments and that they will not receive payment for care provided to that individual, even when the individuals are eligible to receive hospital care for their current acute condition; on numerous occasions, this has resulted in imminent and avoidable death to the patient from causes unrelated to their terminal diagnosis, if any, due to them receiving a lower level of care than required by their medical condition; and
>
>>iii. When Relator Michaels did not follow the requirements set forth above due to patient/family requests and the patient's best medical interest, Defendants terminated her employment in retaliation and provided a pretextual reason for the retaliatory discharge. [Reference to a specific patient.]

The initial complaint in *Agape I*, then, describes a scheme implemented by Agape to refer patients to GIP care, when such care was inappropriate, in order to receive a higher reimbursement rate and lower costs. There is even a reference to a specific patient, and an allegation that one relator was fired for not keeping that patient in Agape for GIP care.

The initial complaint in *Agape II* makes similar, but somewhat different allegations regarding GIP care:

>41. Additionally, Defendants opened the Hospice House in July, 2011, to provide a General In-Patient (GIP) facility for hospice patients who had previously been sent to an Agape skilled nursing facility for GIP service.
>
>42. The true purpose of the Hospice House was to provide a means to reduce the impact of Defendant's hospice cap charge for patients who remained in hospice well beyond the typical 6 months by caring for patients who had more serious needs and whose life expectancy was well below 6 months.
>
>43. As a result, Defendants' staff would look for hospice patients were in the last stages of life and "flip" these patients from hospice to GIP, regardless of medical necessity, thereby billing Medicare, Medicaid, and/or Tricare as much as six times the dollar amount sought under traditional hospice.
>
>44. Prior to the opening of the Hospice House, patients flipped to GIP and placed at a skilled nursing facility did not have access to a hospice nurse 24 hours a day and rarely received any care in addition to the standard 2 hour checks provided to all patients at the skilled nursing facility. Notwithstanding, Defendants sought reimbursement from Medicaid, Medicare, and/or Tricare at the higher GIP reimbursement rate.

> 45. Relator Pickett personally witnessed admission of patients where were not appropriate for GIP, as many of the patients did not have uncontrolled symptoms and failed medical interventions.
>
> 46. Relator Pickett observed patients admitted to GIP at the first sign of nausea without any documentation about previous efforts to control symptoms. Relator Pickett also observed patients admitted to GIP for wound care who did not require complex dressing changes.
>
> 47. Relator Pickett concluded, on a number of occasions, that patients were ineligible for GIP, only to learn that the patient was admitted by overnight nurses who lacked the training to make such a determination.
>
> 48. Relator Pickett was counseled by supervisors on her decisions not to admit patients, telling her that it was important to admit patients to GIP without regard to medical necessity. Monetary incentives were put in place to accomplish this goal.
>
> 49. Relator Rush noted that a patient, T.W., a home health patient with congestive heart failure, was admitted to GIP because of ankle swelling. The attending nurse did not document reasonable efforts to stop the swelling. Furthermore, no physician saw T.W. until the following day. When the physician finally saw T.W., she was immediately discharged.

*Agape II*, ECF No. 1.  Thus, both complaints plainly make largely overlapping claims, with different details, that Agape inappropriately certified patients for GIP care to improve Agape's bottom line.  A "later suit is barred if it is based upon the 'same material elements of fraud' as the earlier suit, even though the subsequent suit may 'incorporate somewhat different details.'" *Carter*, 710 F.3d at 182.  Thus, the "somewhat different details" of *Agape II* do not save it from the first-to-file bar.

One distinction is that certain Agape entities are named in one complaint, and not in the other.  Certain Agape entities are named in both complaints.  The District of Columbia Court of Appeals has held that the first-to-file rule bars an action against subsidiaries of a corporation when a first-filed action names only the corporation.  *U.S. ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218–19 (D.C. Cir. 2003).  In reaching this conclusion, the D.C.

Circuit relied on the fact that the first action alleged "corporate-wide" fraud perpetrated by the corporation through its subsidiaries. *Id.* The Tenth Circuit Court of Appeals, relying on *Hampton*, has concluded that an FCA action against a corporation bars a later action alleging the same essential claim of fraud against its subsidiaries. *United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1280 n. 4 (10th Cir. 2004). The Sixth Circuit Court of Appeals has stated in dicta that, for purposes of the first-to-file rule, "the fact that the later action names different or additional defendants is not dispositive as long as the two complaints identify the same general fraudulent scheme." *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 517 (6th Cir. 2009) (internal citations omitted). That is "because the purpose of the FCA's first-to-file provision is to prevent the filing of more *qui tam* suits once the government already has been made aware of the potential fraud perpetrated against it." *Id*. The fact that the complaint in *Agape II* names different subsidiaries as defendants, therefore, does not cause the court concern.

The court is similarly unconcerned by the fact that the initial complaint in *Agape I* may[4] not have survived a motion to dismiss pursuant to Rule 9(b). "[F]irst-filed complaints need not meet the heightened standard of Rule 9(b) to bar later complaints; they must provide only sufficient notice for the government to initiate an investigation into the allegedly fraudulent practices, should it choose to do so." *U.S. ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011); *but see Walburn v. Lockheed Martin Corp*., 431 F.3d 966, 972 (6th Cir. 2005) ("[V]ague and broadly-worded … complaint's failure to comply with Rule 9(b) rendered it legally infirm from its inception, and therefore it cannot preempt [a later-filed] action under the first-to-file bar."). Applying these principles, the court concludes that the complaint in *Agape II* alleges the same material elements of fraud with regard to both the hospice reimbursement and

---

[4] The court denied Agape's motion to dismiss the False Claims Act causes of action in this case based upon the court's review of the Second Amended Complaint in *Agape I*. The court will not speculate as to what it would have done facing the same motion with regard to *Agape I*'s initial complaint.

10

GIP claims as alleged in the initial complaint in *Agape I*: an Agape-wide scheme to defraud the United States. Thus, *Agape II* is barred in its entirety pursuant to 31 U.S.C. 3730(b)(5).

### b. *Relators' Motion to Consolidate the Complaints*

The relators in *Agape I* and *Agape II* have moved to consolidate or join the two cases together, to cure any concerns related to the first-to-file bar or the public disclosure bar. The first-to-file bar itself provides: "no person other than the Government may *intervene or bring a related action* based on the facts underlying the pending action." 31 U.S.C § 3730 (b)(5) (emphasis added). The relators argue jointly that this language prohibits only intervention pursuant to FRCP 24. They argue that this court may allow permissive joinder pursuant to FRCP 20, or in the alternative, consolidation pursuant to FRCP 42. The court disagrees.

Having concluded that *Agape II* is barred by the first-to-file rule, this court is stripped of subject matter jurisdiction over that action. *Carter*, 710 F.3d at 181. The court must, therefore, deny the joint motion of the relators in *Agape I* and *Agape II* to consolidate the two actions. The court cannot consolidate cases, or permit joinder, where the court does not have jurisdiction. *Fed. Recovery Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995) ("[N]either Rule 15 nor any other rule of civil procedure permit FRS to cure this jurisdictional defect," the False Claims Act's public disclosure bar.); *U.S. ex rel. Denenea v. Allstate Ins. Co.*, CIV.A. 07-2795, 2011 WL 231780 (E.D. La. Jan. 24, 2011) ("[A] relator cannot avoid the first-to-file bar by consolidating his claim with an earlier action."); *U.S. ex rel. Fry v. Guidant Corp.*, CIV.A. 3:03-0842, 2006 WL 1102397 (M.D. Tenn. Apr. 25, 2006) ("[To] permit any potential relator to circumvent the first-to-file doctrine by seeking entrance to the action via amended complaint, thereby undermining a central purpose of Section 3730(b)(5) -the preclusion of plaintiffs with merely duplicative claims."); *U.S. ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999)

([Section 3730(b)(5)] states without qualification that persons other than the government may not intervene in qui tam actions. By drafting the statute in such unequivocal language, Congress made the strongest possible statement against private party intervention in qui tam suits."). Denying consolidation, intervention, or joinder also has the prudential benefit of conserving the litigants' and court's resources, by allowing only *Agape I*, which is currently in discovery, to continue. The court, therefore, denies the motion to consolidate *Agape I* and *Agape II*.

      *c. Public Disclosure*

Agape argues that the GIP claims in *Agape I* are based upon, or substantially similar to, public disclosures made in or relating to *Agape II*. The conduct alleged with regard to GIP care straddles the effective date of an amendment to the statute relevant to the public disclosure bar at issue. *See* 31 U.S.C. 3730(e)(4). The statute in effect at the time the underlying conduct occurred is controlling. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring) ("The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal."); *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 915 (4th Cir. 2013) (Determining that with regard to the 2010 public disclosure amendment, "[t]he retroactivity inquiry looks to when the underlying conduct occurred.").

Prior to the relevant amendments, which took effect on March 23, 2010, the public disclosure bar provided as follows:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2005). Subsequent to the March 23, 2010 amendments, the public disclosure bar provides as follows:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2010). Under either version of the statute, the court does not engage in the original source inquiry, *unless* there has been an enumerated public disclosure.

This matter presents a peculiar situation—a situation caused largely by the court allowing a liberal partial lifting of the seal in *Agape II*. A partial lifting of the seal is not contemplated in the *qui tam* statute, but it has become commonplace in this district for the government to request a partial lift. In this case, the court allowed the government to disclose the existence of *Agape II* not only to the Agape defendants, but also to the relators in *Agape I*. *Agape II*, ECF No. 9. The government disclosed the complaint in *Agape II* to relators' counsel in *Agape I* on July 31, 2013.

At a July 28, 2014 hearing, the court heard testimony from both relators in *Agape I*, Ms. Michaels and Ms. Whitesides, and from a private investigative agent retained by Agape, Mr. Taylor. ECF No. 143. The government filed affidavits from an Assistant United States Attorney assigned to *Agape I* and *Agape II,* Ms. Warren, and from special agent Chris Lott.

The thrust of the testimony from the relators in *Agape I* is that they did not have direct

knowledge of particular false claims alleged at certain Agape entities named in their amended complaints, and that claims with regard to certain patients occurred after the employment of the relators in *Agape I* was terminated.  Mr. Taylor's testimony was that in his former experience as a federal investigative agent, witnesses spoke freely about government interviews that had taken place, and that certain witnesses in this case spoke freely with him about those witnesses government interviews.

Special Agent Lott's affidavit states that the government investigated the GIP claims after the filing of *Agape II*, by interviewing numerous witnesses—who were free to discuss the details of the interview with anyone.  *Agape I,* ECF No. 115-1.  Ms. Warren's affidavit states that she disclosed the complaint in *Agape II* to the relators in *Agape I* and did not prevent the *Agape I* relators from conducting interviews of witnesses disclosed in *Agape II*.  *Agape I,* ECF No. 115-2.  According to Agape's defense counsel, this all amounts to one, big, whopping public disclosure.

The court, however, does not look for a public disclosure in the normative definition of the words.  The court looks only for a public disclosure pursuant to one of the categories enumerated in either version of 31 U.S.C. § 3730(e)(4)(A).  There is not one here.

"[A] 'civil hearing' encompasses the filing of a civil complaint and … allegations contained in such a complaint are 'publicly disclosed' for purposes of section 3730(e)(4)(A)." *Grayson v. Advanced Mgmt. Tech., Inc.*, 221 F.3d 580, 582 (4th Cir. 2000).  Here, the complaint in *Agape II* was sealed, and the court allowed a liberal partial lifting of the seal: not only to Agape, but also to the relators in *Agape I*.  Other courts have held that "a sealed *qui tam* complaint, of which a relator has no knowledge, is not a public disclosure for purposes of § 37370(e)(4) [sic]."  *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 46–47 (D.D.C. 2007).  This court's partial lifting of the seal has made this case not such a black

and white situation.  Nonetheless, the court concludes that a *qui tam* action whose existence is kept under seal, except for certain enumerated disclosures authorized by the court, is not a public disclosure within the meaning of the pre-amendment or post-amendment version of 31 U.S.C. § 3730(e)(4)(A).

Finally, the court turns to Agape's argument that the government investigation into the GIP claims was a public disclosure.  The statutory support for Agape's argument on this point comes from the provision finding a public disclosure "in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation," 31 U.S.C. § 3730(e)(4)(A) (2010), or "in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation," 31 U.S.C. § 3730(e)(4)(A) (2006).  These provisions do not provide guidance on exactly what type of "investigation" is contemplated.

Whatever the scope of the investigation contemplated in 31 U.S.C. 3730(e)(4(A), certainly it could not include a government investigation into a *qui tam* complaint.  The False Claims Act provides for broad government investigatory powers into a *qui tam* complaint.[5]  *See* 31 U.S.C. § 3733 (Providing the government the power to issue civil investigative demands to "any person" the government "has reason to believe … may be in possession, custody, or control of any documentary material or information relevant to" a *qui tam* complaint that is under seal.  The government may demand "documentary material," answers to "written interrogatories," and "oral testimony.").  It cannot be then, that congress imparted such investigatory powers upon the government to investigate *qui tam* complaints and also intended for such an investigation to bar related, first-filed *qui tam* actions.

Finding no enumerated public disclosure under either version of 31 U.S.C. 3730(e)(4(A),

---

[5] Often, False Claims Act liability and criminal liability overlap.

15

the court need not address the original source doctrine. Agape's motion to dismiss the GIP claims in *Agape I* pursuant to the public disclosure bar, is, therefore, denied.

>   d. *Agape's Motion to Dismiss for Violation of the Sealing Provisions of 31 U.S.C. § 3730(b)(2)*

Inherent in the court's ruling that *Agape I* is first-filed on all claims, including GIP claims, is that the court must deny Agape's motion to dismiss *Agape I* for failing to file the amended complaints under seal. Because the initial complaint in *Agape I* alleged a fraudulent scheme that put the government on notice of the GIP claims, and the government elected not to intervene, the sealing provisions of 31 U.S.C. § 3730(b)(2) were not violated. *United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1209 (D.C. Cir. 2011).

## V. CONCLUSION

Accordingly, the court denies the motion of the relators in *Agape II* to be declared first-to-file, and dismisses *Agape II* without prejudice,[6] during the pendency of *Agape I*, on first-to-file grounds. *Agape II*, ECF No. 58. The motion of relators in *Agape I* and *Agape II* to consolidate the cases is denied. *Agape I,* ECF No. 154; *Agape II*, ECF No. 73. All other motions in *Agape II* are now moot. *Agape II*, ECF Nos. 67, 55. The court denies Agape's motion to dismiss the GIP claims in *Agape I* on public disclosure grounds. *Agape I,* ECF No. 92. Finally, the court denies Agape's motion to dismiss *Agape I* for failing to file the amended complaints under seal. *Agape I,* ECF No. 131.

---

[6] *U.S. ex rel. Carter v. Halliburton Co*., 710 F.3d 171, 174 (4th Cir. 2013) *cert. granted*, 134 S. Ct. 2899 (U.S. 2014).

The court holds in abeyance the motion of the relators in *Agape I* to stay expert disclosure deadlines, until the issue of the viability of statistical sampling in this matter has been ruled upon. *Agape* I, ECF No. 146.

IT IS SO ORDERED.

August 18, 2014  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge